IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ALBUQUERQUE BERNALILLO
COUNTY WATER UTILITY
AUTHORITY**,

        Plaintiff/Counterdefendant,

v.

                                                              No.06-CV-00754-BB

**CALMAT CO.,** a division of Vulcan Materials
Company, and **VULCAN MATERIALS CO.,**

        Defendants/Counterclaimants.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Defendants' Motion for Partial Summary Judgment on Silt Disposal Issue [Doc. 85] (hereinafter "Defendants' Motion") and Plaintiff's Motion for Partial Summary Judgment on Silt Disposal Issue and Ponds as "Improvements" [Doc. 110] (hereinafter "Plaintiff's Motion"). The Court, having considered the motions, responses, replies, and relevant law, and being otherwise fully informed, finds that both motions will be DENIED.

**I. Background**

      In 2001 Plaintiff Albuquerque Bernalillo County Water Utility Authority purchased surface rights to approximately 162 acres of land from Defendant CalMat Co. [Purchase and Sale Agreement ¶A]. Plaintiff purchased the land in order to construct a water treatment plant. Plaintiff paid Defendant CalMat Co. the appraised value of the surface rights and agreed to give Defendant three years of free rent on the premises for the property. [Purchase and Sale Agreement ¶D]. The Sale Property was sold "as is" at the time the agreement was closed. [Purchase and Sale Agreement ¶1].

Shortly after the parties finished negotiating the purchase agreement, Plaintiff executed a lease back to Defendant CalMat Co. allowing the company to continue gravel mining operations on certain parts of the land [Lease Agreement at 1].[1]  Defendant continued its mining operations on the land and continued to use portions of the land for disposal of waste material, including broken concrete, asphalt and silt.  Defendant also constructed two silt ponds on the leased/licensed premises, which it used for the disposal of truck washing and silt rinsing water. [Defendants' Motion at 4; Plaintiff's Response at 9].  Plaintiff brought the underlying action after it discovered the waste and silt ponds on the site where it intends to build the water treatment plant.  Defendants claim that the plain language of the lease agreement allows them to dispose of silt and other waste materials permanently on the leased and licensed land. [Defendants' Motion at 2]. Plaintiff claims that the lease requires Defendants to remove all the waste and the silt ponds from the land. [Plaintiff's Motion at 1-2].  Based on their individual interpretations of the Lease Agreement both parties seek partial summary judgment on the waste disposal and silt pond issues.

## II. Standard on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is "not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

---

[1]Under this agreement certain portions of the land were leased back to CalMat Co. and certain portions of the land were licensed back to the company. [Lease Agreement at 1].  This distinction does not affect the analysis of the present issue or the result.

Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when it is essential to the proper disposition of the claim." *Haynes v. Level 3 Commc'ns.*, 456 F.3d 1215, 1219 (10th Cir. 2006)  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III. Analysis**

*A. Legal Standard*

This case comes before the Court on the basis of diversity jurisdiction, thus this Court must "ascertain and apply the state law," *Wade v. Emcasco Ins. Co.,* 483 F.3d 657, 665 (10th Cir. 2007), here the substantive law of the state of New Mexico. *See also Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938).  The Court must follow the most recent decisions of the state's highest court, but where no controlling decision exists, the court must try to predict what the state's highest court would do.  *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).   In doing so this Court may seek guidance from decisions rendered by lower courts in the relevant state, *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001), appellate decisions in other states with similar legal principles, *U.S. v. DeGasso*, 369 F.3d 1139, 1148 (10th Cir. 2004), federal district court decisions interpreting the law of the state in question, *Sapone v. Grand Targhee*, 308 F.3d 1096, 1100, 1104-05 (10th Cir. 2002), and "the general weight and trend of authority" in the relevant area of law,  *MidAmerica Constr. Mgmt. v. Mastec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006) (internal quotation marks omitted).  In evaluating these various sources, the court must keep in mind the ultimate goal: predicting what the state supreme court would say on the issue in question.

Though the parties come to opposing conclusions, both parties contend that the language of the Purchase and Sale Agreement and Lease Agreement is unambiguous, thus permitting the Court to grant partial summary judgment in their favor.  Absent ambiguity in the contract, the

Court "is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties." *Montoya v. Villa Linda Mall*, 793 P.2d 258, 259 (N.M. 1990). However, under New Mexico law the determination of whether there is ambiguity in a contract is itself a question of law. *C.R. Anthony Co. v. Loretto Mall Partners,* 817 P.2d 238, 242-43 (N.M. 1991). To make the determination as to whether a contractual provision is ambiguous, the Court may consider evidence of the circumstances surrounding the making of the contract, and of any relevant usage of trade, course of dealing, and course of performance. *Id.* New Mexico law thus allows the Court to consider extrinsic evidence in determining the question of ambiguity. *Mark V, Inc. v. Mellekas,* 845 P.2d 1232, 1235 (N.M. 1993). If the extrinsic evidence presented leads the Court to conclude that the contract is reasonably and fairly susceptible of different constructions, then an ambiguity exists in the contract. *Id.* Should the Court find ambiguity in the contract, the jury must resolve the ambiguity as an issue of ultimate fact. *C.R. Anthony Co.,* 817 P.2d 238 at 243.

*B. Mining Waste Disposal Issue*

Defendants claim that the lease clearly and unambiguously allows them to permanently dispose of waste from the mining operation on the lease and licensed areas. [Defendants' Motion for Summary Judgment at 8]. Defendants cite §1.1 of the Lease which states, "[t]he Premises may be used for any lawful purpose...including but not limited to disposal of broken concrete, asphalt, and other waste material and silt on the Premises and storage of trucks and equipment...Tenant shall have no obligation to compact any materials dumped or disposed on the Premises." [Lease Agreement at 1].[2] Defendants claim that this language in the Lease, combined with the lack of any clear requirement to remove the disposed materials and silt ponds from the leased and licensed property, entitles them to summary judgment on the issue. Plaintiff contends the exact opposite, that the lease imposes a duty upon Defendants to remove the silt ponds and waste, thus entitling them to summary judgment on the issue.

---

[2]The Premises are defined in §1.1 as including the 50 acre plot, the 20 acre plot, and the three license areas: the north recycling site, the future south recycling site, and the sand stockpile area.

The contract is not completely silent on the subject of waste produced by Defendants' mining business, yet contrary to both Plaintiff's and Defendants' assertions, no provision, not even the Termination provision (§14.3), clearly indicates the intent of the parties regarding the permanent disposal of the silt and debris dumped on the land and into silt ponds by Defendants. The use provision of §1.1 appears to enumerate the many uses to which Defendants may put the premises, and obviates any duty to compact materials disposed on the premises. [Lease Agreement at 2]. However, the provision does not speak to Defendants' duties upon termination of the lease. The Termination provision of the lease, §14.3, obligates Defendants to "grade the slope to not more than 2:1, and grade the bottom level for the Premises or part of the Premises," and additionally requires Defendants to "remove all buildings, improvements, or equipment."[3] The provision does not address waste materials, however. [Lease Agreement at 20]. Thus, notwithstanding both Plaintiff's and Defendants' arguments to the contrary, it appears that the contract simply does not address what should happen upon termination of the lease to the debris, silt, and silt ponds produced by the mining operation.

Facing this contractual silence, Plaintiff and Defendants draw very different inferences from the contractual language and extrinsic evidence surrounding the creation and execution of the documents. Plaintiff claims that the language regarding improvements and grading in the Lease Agreement implies a duty for Defendants to remove the waste and silt ponds. [Plaintiff's Response at 4]. Plaintiff additionally provides some evidence in its Response that, contrary to Defendants' contentions, Defendants' employees believed they were responsible for removing buildings, stockpiles, and debris from the premises prior to turning over the land to Plaintiff at the termination of the lease. [Deposition of Thomas D. Clay at 140-141].

Defendants, in contrast, vociferously contest any duty to remove silt ponds and debris from the land, citing the use provisions of the Lease Agreement and the language regarding a lack of a duty to compact waste materials on the land. [Defendants' Motion at 7-8]. Defendants additionally point to the contract negotiating process, claiming that Plaintiff "bargained away its right to object to the disposal of silt and other waste on the subject property." [Defendants' Reply

---

[3]This requirement is in §13.1 of the lease, incorporated by reference into the Termination provision of §14.3. [Lease Agreement at 18, 20].

5

at 1]. Yet the contract bargaining process is itself somewhat ambiguous. Defendant CalMat Co. sold Plaintiff the property at its appraised value, and then negotiated a lease back of the premises so that the company did not have to cease its mining operation. It does not appear that Plaintiff received any sort of discount to compensate for the destruction of the site, thus it is unclear at least in terms of the purchase price, that Plaintiff actually made the deal that Defendants claim that it did. In other words, it does not make sense that Plaintiff would pay for the full value of the land only to have it returned to them greatly decreased in value and utility due to the destruction of the site by Defendants. Given the silence of the contract on Defendants' responsibilities with regard to the waste upon lease termination, the very different interpretations each party took from the contract, and the lack of clarity regarding the purchase price, the contract is clearly ambiguous and summary judgment is inappropriate at this time. As Defendants' arguments regarding summary judgment on Plaintiff's statutory trespass claim and negligence claim rest on their argument that the contract expressly allows them to permanently leave debris and waste on the leased land, summary judgment on these claims must similarly be denied.[4]

*C. Private Nuisance*

Defendants additionally contend that they are entitled to summary judgment on the private nuisance claim, essentially arguing that Plaintiff, as a lessor, has no standing to bring a private nuisance action against Defendants, the lessees.[5] The New Mexico courts have not spoken directly to the issue of whether a lessor can maintain a private nuisance action against a lessee, however, the courts of the state have adopted the definition of private nuisance contained

---

[4]As the Court is denying summary judgment to Defendants, the Court does not need to address Plaintiff's argument that Defendants' interpretation of the lease violates the New Mexico Solid Waste Act, and thus public policy.

[5]Defendants argue first and foremost that the private nuisance claim is foreclosed because the contract explicitly permits the usage of the land complained about. As the Court has found the contract ambiguous as to whether Defendants are permitted to permanently dispose of debris on the land, however, this argument does not support summary judgment on the private nuisance claim.

in the Restatement (Second) of Torts. *See, Scott v. Jordan,* 661 P.2d 59*,* 62 (N.M. App. 1983)*; Padilla v. Lawrence*, 685 P.2d 964, 968 (N.M. App. 1984). The Restatement (Second) of Torts notes that generally owners of nonpossessory estates in land do not have rights or privileges in respect to the present use or enjoyment of the land, and therefore have no action for an interference with it. Restatement (Second) of Torts, § 821E (1979). However, the Restatement makes an exception where the "interference with the present use or enjoyment of land has a permanent, detrimental effect on the usability of the land and thus affects the rights and privileges of the owner of the nonpossessory estate in respect to the future use and enjoyment of the land." *Id*. The Restatement goes on to note, "[t]he owner of the nonpossessory estate in this case is usually in the position of a landlord receiving rent from the tenant, and the value of his estate is definitely impaired by a permanent or continuing interference with the usability of the land." *Id.* Thus under the Restatement it seems clear that a landlord may maintain an action for nuisance against a tenant where the landlord's estate is impaired by a permanent or continuing interference with the usability of the land.

Defendants cite to various cases that involve a subsequent purchaser or lessee of land to support their contention that Plaintiff has no standing to bring a private nuisance suit. *See, e.g., Moore v. Texaco, Inc.,* 244 F.3d 1229*,* 1232-33 (10th Cir. 2001) (finding that a purchaser of land may not bring a private nuisance suit against the prior owner under Oklahoma law); *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 313 (3rd Cir. 1985) (finding that tenants cannot recover from landlords in actions for private nuisance for defective conditions existing on the premises over which they have assumed control because to do so would "circumvent limitations on vendor liability inherent in the rule of caveat emptor"). However, courts have distinguished the "caveat emptor" scenario of a purchaser or lessee from the situation described in the Restatement in which the tenant has created a permanent or continuing interference with the usability of the land during his tenancy.  *See, e.g., Graham Oil Co. v. BP Oil Co.,* 885 F.Supp. 716, 723-25 (W.D. Pa. 1994) (distinguishing the Third Circuit's holding in *Hercules*, and finding that a private nuisance suit brought by a landlord against a tenant was permissible under the exception stated in the Restatement); *Sealy Conn., Inc. v. Litton Indus., Inc.*, 989 F.Supp. 120, 124-25 (D. Conn. 1997) (finding that a lessor has standing to bring a nuisance suit against a lessee). While Plaintiff was a

purchaser of the land from Defendants, it does not seek to bring the private nuisance action for nuisance prior to its purchase of the land, but rather due to Defendants' actions as lessees. As such, the Restatement clearly permits such an action to be brought and summary judgment is inappropriate.

*D. Silt Ponds as "Improvements"*

The final area of contention between the parties regards the removal of two silt ponds, one created on the 20 acre lease area, and the other created on the border between the 20 acre lease area and one of the license areas. [Plaintiff's Motion for Partial Summary Judgment at 6; Defendants' Response at 5]. Plaintiff maintains in its motion for summary judgment that §13.1 of the lease, which requires the removal of any "buildings, improvements, or equipment" and is incorporated by reference into the Termination provision, §14.3, obliges Defendants to remove the silt ponds. [Plaintiff's Motion for Summary Judgment at 11-19]. Defendants maintain they have no obligation to remove the silt ponds. [Defendants' Response at 13].[6]

Plaintiff's argument rests on whether the silt ponds constructed by Defendants are improvements under New Mexico law. The question of whether an addition to land is an improvement is a question of law, but its resolution is grounded in fact. *St. Louis v. Rockwell Graphic Systems, Inc.*, 605 N.E.2d 555, 556 (Ill. 1992). The New Mexico courts have addressed the definition of "improvement" solely in the context of interpreting a statute, N.M.S.A. §37-1-27, the statute of repose for actions based on defective or unsafe conditions arising out of construction. To define the statutory scope of the term improvement, the New Mexico courts

---

[6]Plaintiff additionally seeks to separate out the water used for truck washing, arguing that the lease expressly prohibits Defendants from dumping this water on the land. [Plaintiff's Motion at 20-22]. The ultimate issue, however, underlying Plaintiff's motion regards the removal of the silt ponds. The truck washing water is only a portion of the water dumped into these ponds. As this issue is intertwined with the silt disposal issue and pond formation issue discussed above, the Court does not have to reach any conclusion regarding the truck washing provisions at this time. *See, e.g., Taylor v. Rederi A/S Volo,* 374 F.2d 545, 549 (3d Cir. 1967) (noting that "the trial court may exercise its discretion in denying summary judgment where a part of an action may be ripe for summary judgment but it is intertwined with another claim that must be tried"); *Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir. 1975).

have looked to the definition of improvement in Webster's Third New International Dictionary (Unabridged). *See, e.g., Mora-San Miguel Elec. Coop., Inc. v. Hicks & Ragland Consulting & Eng'g. Co.*, 598 P.2d 218, 220 (N.M. App.1979); *Delgadillo v. Socorro*, 723 P.2d 245, 246 (N.M. 1986). While the definition of "improvement" within the statutory scheme does not bind this Court's interpretation of the common law definition of an improvement, the fact that the New Mexico courts looked to the dictionary definition is instructive, since it indicates the New Mexico courts would likely adopt this same definition of improvement if faced with the necessity of developing a common law definition of the term. The dictionary definition adopted by the New Mexico courts defines an improvement as "the enhancement or augmentation of value or quality: a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Mora-San Miguel*, 598 P.2d at 220 (quoting Webster's Third New International Dictionary (Unabridged)).  Thus it appears that these factors must be applied to determine whether an addition to property is an improvement under New Mexico law. *Delgadillo*, 723 P.2d at 246-47 (also noting that "[i]n applying the definition of improvement, courts also consider whether the improvement adds to the value of the property for the purpose of its intended use"). Plaintiff contends that the silt ponds make the property more useful for Defendants and enhance the land for Defendants' purposes and thus are improvements under New Mexico law.  The definition of "improvement" under New Mexico law, however, makes an increase in the capital value of the land one of the hallmarks of an improvement. While Plaintiff presents evidence regarding the benefit of the silt ponds to Defendants, Plaintiff has presented no evidence regarding an increase in the capital value of the land.  As this is an essential factual predicate to the determination of whether an addition to land is an improvement, the Court cannot make the legal determination as to whether the silt ponds constitute improvements and thus cannot grant summary judgment on this issue at this time.

## **ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that the Defendants' Motion for Partial Summary Judgment on Silt Disposal Issue [Doc. 85] and

Plaintiff's Motion for Partial Summary Judgment on Silt Disposal Issue and Ponds and "Improvements" [Doc 110] be, and hereby are, DENIED.

Dated this 13th day of March, 2008.

*[signature]*

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE